**THE HERMITAGE CLUB COMPANY, INC., Appellee,**

v.

**POWERS, Appellant**

[Cite as *The Hermitage Club Co., Inc. v. Powers* (1995), 107 Ohio App.3d 321.]

Court of Appeals of Ohio,
First District, Hamilton County.

No. C–940195.

Decided Nov. 8, 1995.

*Graydon, Head & Ritchey, Thomas L. Gabelman, Joseph B. Jaap* and *Brenda V. Thompson,* for appellee.

*Sirkin, Pinales, Mezibov & Schwartz, Marc. D. Mezibov* and *Matthew Brownfield,* for appellant.

---

*Per Curiam.*

Plaintiff-appellee The Hermitage Club Company, Inc. ("Hermitage") is a for-profit Ohio corporation which owns and operates a residential housing community on approximately two hundred fifty acres of land located in Hamilton County. The property was registered pursuant to R.C. Chapters 5309 and 5310, the Ohio Torrens Act, on January 2, 1970. Hermitage also maintains a two-and-one-half-

acre lake, tennis court, picnic area, wooded area and various other amenities on its property for the use of its shareholders.

Individuals become members or shareholders of Hermitage through an application process. An applicant must be approved by the existing members. Upon approval, the applicant purchases a share of stock in Hermitage and executes a ninety-nine-year lease on no more than a one-acre parcel of Hermitage's property. The applicant purchases any improvements on the leased property from the former tenant in a separate transaction.

On October 25, 1983, defendant-appellant John A. Powers purchased a share of stock in Hermitage. At the same time, Powers entered into a ninety-nine-year lease with Hermitage for a parcel of land known as "tract three." Tract three consists of approximately .67 acres bordering Hermitage's lake. Powers's lease was noted on Hermitage's original certificate of title to registered land on November 1, 1983.

The certificate of Hermitage stock issued to Powers states:

"This stock transferable to members only, subject to the rules, regulations and by-laws of said Corporation."

The lease for tract three provides that the property is leased to Powers:

"With a right of way to, from and through the above described premises to be designated by the Board of Directors of said Lessor corporation and subject to such rules and regulations as may from time to time be established by the Board of Directors; Provided, however, that no extension of existing roads or future roads be made or laid out to pass closer than a distance of 30 feet from any member's cottage.

" * * *

"TO HAVE AND HOLD the same * * * yielding and paying therefore during said term the annual dues as fixed and all charges fixed by the Board of Directors[.]"

Further, the lease contains covenants of the lessee, including the following:

"Lessee will observe and abide by all rules, requirements and regulations of Lessor, as set forth in the Code of Regulations and By–Laws of Lessor."

Powers's leasehold, as we have already noted, borders on Hermitage's lake. The lake and its dam were constructed beginning in 1922, two years after Hermitage's incorporation. The dam is located on the west end of the lake outside the boundaries of any shareholder's leasehold. When the lake level rises, the normal overflow runs through an underground culvert or metal pipe and empties into a creek. Any excess water which cannot be carried by the normal overflow culvert flows into an emergency "spillway" or "swale" located above the

culvert. Portions of both the culvert and the emergency spillway cross Powers's leasehold. Powers was aware of the location of the culvert and spillway at the time he entered into his lease. In 1989, Powers excavated a portion of the underground culvert, intending to interfere with its operation. Powers stated that he wanted to "cut a hole in the culvert pipe and fill it with concrete."

Pursuant to his lease, Powers, along with the other Hermitage shareholders, is required to pay annual dues. In 1989, the dues were $1,000. The dues remained $1,000 in 1990, but Hermitage elected not to collect a payment for the last quarter and actually collected only $800. Powers sent a letter to Hermitage's treasurer claiming that the 1990 dues reduction was permanent.

On November 15, 1990, Hermitage filed a complaint for a declaratory judgment and an injunction against Powers, alleging that he had violated provisions of his lease as well as certain of Hermitage's rules as set forth in its code of regulations, bylaws, rules and regulations and board of directors' resolutions. In his answer, Powers claimed that he was not bound by Hermitage's rules and regulations. He also claimed that Hermitage owed him rent for the spillway and culvert. Powers later filed a supplemental counterclaim for a declaration that his annual dues payment was fixed at $800.

Hermitage filed a second complaint on November 17, 1992, seeking to evict Powers from his leasehold for violations of his lease and Hermitage's rules and regulations which were incorporated into the lease. The complaint was consolidated with Hermitage's original complaint.

Following a bench trial, the trial judge found that Powers was bound by Hermitage's rules and regulations pursuant to his lease and the conditions of his stock purchase. The judge further found that Powers was aware of Hermitage's rules and regulations and of the fact that they were binding on him at the time he executed his lease. The trial judge determined that Hermitage had a right to maintain the spillway and culvert for the benefit of all shareholders, and that Hermitage did not owe Powers any rent for the spillway and culvert. Further, the judge found that the annual dues payment was not fixed at $800, and that the board of directors could adjust the dues as future circumstances warranted.

Powers has appealed, raising two assignments of error for our review. We find both assignments of error to be meritless.

Powers's first assignment of error alleges that the trial court erred in holding that Hermitage has the right to regulate the use of the lake and the dam, including the right to repair and maintain the spillway and culvert which cross Powers's leasehold. Powers argues that his leasehold is registered for purposes of the Ohio Torrens Act, R.C. Chapters 5309 and 5310, because it is memorialized on Hermitage's certificate of title to registered land. Because no easement for

the spillway and culvert appear on Hermitage's certificate of title, Powers argues, Hermitage cannot claim such an easement across his leasehold for the reason that the Ohio Torrens Act requires that all easements be registered on the property's certificate of title.

R.C. 5309.06 provides in part:

"No estate less than a fee simple * * * shall be registered, unless the fee in possession * * * or other character of fee in and to the same land, has been registered first or is registered at the same time. If the estate of the applicant is subject to any outstanding lesser estate, including * * * estates for years * * * or any private easement or other estate or interest of any kind * * * each shall be noted on the certificate of title and duplicate thereof * * * and the title to the estate so registered and certified shall be subject only to such lesser estates * * * and charges as are so noted, except as provided in section 5309.28 of the Revised Code."

■ The Ohio Supreme Court held in *Vinewood Realty Co. v. Willowick* (1940), 136 Ohio St. 257, 261, 16 O.O. 368, 370, 25 N.E.2d 345, 348, that where the title of the owner of the fee-simple estate is registered, "the rights of owners of lesser estates are recognized and protected by statements or memoranda upon the certificate of the owner in fee simple, and separate certificates are unnecessary." Therefore, Powers's leasehold is considered to be registered by virtue of its memorialization on Hermitage's certificate of title.

R.C. 5309.34 states that except in cases of fraud, and except as provided in R.C. 5309.02 through 5310.21, a bona fide transferee for valuable consideration of any interest in registered land shall not be affected by notice, actual or constructive, of any unregistered "trust, lien, claim, demand or interest." R.C. 5309.28 states in part:

"Every applicant in a land registration case who without fraud on his part receives a certificate of title in pursuance of a decree of registration, and every subsequent purchaser of registered land, who takes a certificate of title for value and *in good faith,* shall hold such land free from all estates, encumbrances, and rights except those noted on the certificate[.]" (Emphasis added.)

■ In *Shaker Corlett Land Co. v. Cleveland* (1942), 139 Ohio St. 536, 542, 23 O.O. 27, 29–30, 41 N.E.2d 243, 246, the Ohio Supreme Court stated:

"So the presence of a valuable consideration and good faith are all-sufficient to constitute a *bona fide* purchase of registered lands. Conversely the absence of either or both of these two elements makes the purchase subject to an outstanding equity. Though notice in itself is not a factor in determining the *bona fide* character of a transaction, knowledge of a conflicting interest is, for the authori-

ties acknowledge a fine distinction between notice and knowledge. If the purchaser's knowledge of extraneous facts relating to an outstanding equity imports bad faith he takes title subject to the equity." (Citation omitted.) See, also, *Jones v. Heritage Restaurant, Inc.* (June 6, 1979), Hamilton App. No. C–780261, unreported.

Powers's lease was noted on Hermitage's certificate of title. In the lease, Powers expressly covenanted to be bound by Hermitage's rules and regulations. Hermitage's rules and regulations were also made binding on Powers by the conditions of his stock purchase. Upon executing his lease and becoming a shareholder, Powers contracted to be bound by Hermitage's bylaws, rules and regulations, essentially for the protection of the entire Hermitage membership.

Powers was aware of the existence of the spillway and culvert prior to the time he entered into his lease. It is clear from the evidence presented that Powers was also aware that Hermitage maintained the spillway and culvert for the good of the entire membership. Powers, as well as all the Hermitage shareholders, benefitted from the maintenance of the spillway and culvert.

We hold that the trial court correctly found that Hermitage had the right to make rules and regulations for the use of the lake and dam area, including the spillway and culvert. We further hold that in regard to the spillway and culvert, Powers did not take his leasehold in good faith, in that he had actual knowledge of these conditions. Therefore he is not protected by the Torrens Act. The Torrens system of land registration is designed to protect bona fide transferees of registered land. It is not, as the trial court noted, designed to protect a transferee from agreements which he made during his ownership. The first assignment of error is overruled.

Powers's second assignment of error alleges that the trial court erred in finding that Hermitage's board of directors may adjust the annual dues as future circumstances fairly warrant. Powers's lease states that he is obligated to pay "the annual dues and all charges fixed by the board of directors." The phrase is unambiguous. Nothing in the lease establishes a set amount for dues. The lease clearly provides for annual dues, the amount of which is to be determined by the board of directors as circumstances warrant. The second assignment of error is feckless and is overruled.

The judgment of the trial court is affirmed.

*Judgment affirmed.*

GORMAN, P.J., PAINTER and SUNDERMANN, JJ., concur.