**DENHAM, Admr., Appellant,**

v.

**CITY OF NEW CARLISLE et al., Appellees.**

[Cite as *Denham v. New Carlisle* (2000), 138 Ohio App.3d 439.]

Court of Appeals of Ohio,
Second District, Clark County.

No. 98–CA–19.

Decided June 30, 2000.

*David M. Deutsch,* for appellant.

*Neil F. Freund, Lynnette Pisone Ballato,* for appellees.

FAIN, Judge.

Plaintiff-appellant Teresa Denham ("appellant") appeals from a summary judgment rendered against her by the Court of Common Pleas of Clark County. Appellant contends that the trial court erred by failing to rule on her motion for a continuance and to compel discovery prior to granting summary judgment. She further claims that the trial court erred by granting summary judgment in favor of the city of New Carlisle and its paramedics because she established the existence of a genuine issue of material fact whether her claims were barred by statutory immunity.

We conclude that the trial court's decision to grant summary judgment is supported by the record because appellant failed to establish a genuine issue of fact upon which reasonable minds could find in her favor. Accordingly, the judgment of the trial court is affirmed.

I

On January 17, 1997, plaintiff's husband, decedent Jerry Denham, and his friend, David Adkins, went to a bar in New Carlisle, Ohio. While at the bar, Jerry Denham was involved in an altercation with another patron of the bar. At some point, a 911 call was placed from the bar, and emergency medical personnel were dispatched to the bar at 1:17 a.m. Vern Whitt, a Clark County sheriff's deputy, arrived at the scene at 1:18 a.m. According to the Ohio Uniform Incident Report filed by Whitt, Denham was "passed out sitting in a chair."

Shortly thereafter, at 1:29 a.m., New Carlisle Emergency Medical Services paramedics, Ward Moeller and Felix Shanahan, also arrived at the scene. According to the affidavits of the paramedics, the call from the bar indicated that a man had fallen on the ice and was unconscious. Upon arriving at the bar, the paramedics were directed to Denham, who was sitting at the bar. The paramedics' affidavits indicate that Denham "presented as extremely intoxicated with no apparent injuries." The affidavits further indicate that an ammonia capsule was administered to Denham, who "immediately responded by displaying uncooperative and belligerent behavior." The paramedics averred that Denham verbally ordered them to stay away from him, would not cooperate with their attempt to obtain his vital signs, and refused to be transported to the hospital. They further averred that David Adkins informed them that his wife, Dana Adkins, would transport Denham home. The paramedics informed the Adkinses that Denham should sleep on his stomach, and that they should call emergency medical services if he experienced any problems. The paramedics left the scene after Denham departed with Dana and David Adkins. Deputy Whitt remained at the scene to investigate the altercation.

The New Carlisle Emergency Medical Services was dispatched at 11:34 a.m. that same day to Denham's residence. Paramedics arrived at the home and found Denham lying prone in a bed. After an initial examination, Denham was transported by Care Flight to Miami Valley Hospital in Dayton. He was pronounced dead while in emergency surgery. An autopsy revealed that he died from blunt impact injuries to his head.

On January 24, 1997, Teresa Denham filed suit against the bar owners and the patron involved in the physical altercation with Jerry Denham. She also filed suit against the city of New Carlisle and paramedics Ward Moeller and Felix Shanahan. The city filed a motion for summary judgment after discovery was

conducted. On January 5, 1998, the trial court granted the motion, and dismissed the action against the city and the paramedics.

Thereafter, appellant filed notices voluntarily dismissing the remaining defendants. She also filed a notice of appeal from the summary judgment rendered against her. Upon motion by the city, we dismissed the appeal for lack of a final appealable order. The Ohio Supreme Court reversed that order, thereby reinstating this appeal. See (1999), 86 Ohio St.3d 594, 716 N.E.2d 184.

## II

Appellant's first assignment of error states:

"The trial court erred in deciding the motion for summary judgment without first deciding plaintiff's second motion to compel discovery and plaintiff's motion for continuance."

Appellant contends that the trial court erred when it failed to rule on her second motion for a continuance and to compel discovery.

We begin by noting that the trial court, by granting summary judgment, implicitly overruled appellant's motion. The issue then is whether it was error to do so. "A trial court has wide discretion to grant or deny a request for a continuance pursuant to Civ.R. 56(F) and its decision will not be reversed absent an abuse of that discretion." *Walter v. AlliedSignal, Inc.* (1999), 131 Ohio App.3d 253, 264, 722 N.E.2d 164, 171–172, citing *Glimcher v. Reinhorn* (1991), 68 Ohio App.3d 131, 138, 587 N.E.2d 462, 467. A trial court also has discretion in the regulation of discovery matters. *Tyler v. Cleveland* (1998), 129 Ohio App.3d 441, 447, 717 N.E.2d 1175, 1179.

This action was filed in January 1997. During the course of this action, appellant issued four sets of interrogatories, six sets of requests for production of documents, and one set of requests for admissions. The motion for summary judgment was filed on August 12, 1997. Appellant filed a motion for a continuance pursuant to Civ.R. 56(F) and a motion to compel discovery. That motion was granted. Thereafter, on November 20, 1997, appellant filed a second motion for continuance and to compel. Appellant also filed responses to the motion for summary judgment. The trial court did not enter an order regarding the second motion, but instead rendered summary judgment on January 5, 1998.

Appellant's second motion to compel stated that the city had failed to respond to her third set of interrogatories and had failed to supplement the responses to two requests contained within her second set of requests for documents. Specifically, the items at issue pertained to the personnel files of the paramedics and operating guidelines used by the emergency medical services.

We have reviewed the information sought. In regard to the personnel files, the city merely provided certification cards showing that the paramedics were properly operating as paramedics. It appears from the record that those were the only items contained in the personnel files. More important, this issue does not bear on the legal question whether the paramedics, when they responded to the call from the bar, acted in a manner constituting wanton and wilful misconduct.

It also appears from the record that the city produced all documents regarding operating policies. Indeed, in her response to the motion for summary judgment, appellant relies heavily on these documents.

Moreover, "Civ.R. 56(F) requires the [party opposing summary judgment] to submit affidavits with sufficient reasons stating why it cannot present by affidavit facts sufficient to justify its opposition." *Gates Mills Invest. Co. v. Pepper Pike* (1978), 59 Ohio App.2d 155, 169, 13 O.O.3d 191, 199, 392 N.E.2d 1316, 1325. "When a request for a continuance to respond to a motion for summary judgment is not supported by affidavits, a trial court is free to consider the merits of the motion without first ruling on the motion for continuance." *Ramsey v. Edgepark, Inc.* (1990), 66 Ohio App.3d 99, 104, 583 N.E.2d 443, 447, citing *Grange Mut. Cas. Co. v. State Auto. Mut. Ins. Co.* (1983), 13 Ohio App.3d 217, 13 OBR 267, 468 N.E.2d 909. In this case, appellant failed to support her motion with an affidavit.

From our review of the record, we cannot say that the trial court abused its discretion by denying the second motion for a continuance and to compel discovery. The first assignment of error is overruled.

## III

Appellant's second assignment of error provides:

"The trial court erred in granting the motion for summary judgment because the record contains evidence upon which a jury could conclude that the defendants acted in a willful or wanton fashion in failing to provide plaintiff's decedent with necessary emergency medical treatment."

Appellant contends that the trial court erred by rendering summary judgment in favor of the city of New Carlisle and the paramedics. In support, she argues that the evidence establishes the existence of a genuine issue of material fact whether the defendants acted in a wanton and willful manner in administering emergency medical services to her husband, thereby making them liable for his death pursuant to R.C. 4765.49.

R.C. 4765.49(A) provides that "[a] first responder, emergency medical technician-basic, emergency medical technician-intermediate, or emergency medical technician-paramedic is not liable in damages in a civil action for injury, death, or

loss to person or property resulting from the individual's administration of emergency medical services, unless the services are administered in a manner that constitutes willful or wanton misconduct." Similarly, R.C. 4765.49(B) provides that "a political subdivision * * * that provides emergency medical services * * * is not liable in damages in a civil action for * * * death * * * arising out of any actions taken by a * * * paramedic * * * unless the services are provided in a manner that constitutes willful or wanton misconduct."

In defining "wilful and wanton misconduct," this court has noted:

"Wilful misconduct is intentionally doing that which is wrong or intentionally failing to do that which should be done. The circumstances must also disclose that the defendant knew or should have known that such conduct would probably cause injury to the plaintiff. It is a general rule that every person may be presumed to intend the natural and probable consequences of his acts. Wilful misconduct implies an intentional disregard of a clear duty or of a definite rule of conduct, a purpose not to discharge such duty, or the performance of wrongful acts with knowledge of the likelihood of resulting injury. Knowledge of surrounding circumstances and existing conditions is essential; actual ill will or an intent to injure need not be present.

"Wanton misconduct must be under such surrounding circumstances and existing conditions that the party doing the act or failing to act must be aware, from his knowledge of such circumstances and conditions, that his conduct will probably result in injury. Wanton misconduct implies a failure to use any care for the plaintiff and an indifference to the consequences, when the probability that harm would result from such failure is great, and such probability is known, or ought to have been known, to the defendant.

"Moreover, this court has defined 'wilful and wanton misconduct' as 'behavior demonstrating a deliberate or reckless disregard for the safety of others.'" *Bedwell v. Physio–Control ·Corp.* (Jan. 5, 1991), Miami App. No. 89–CA–67, unreported, 1991 WL 1665.

Appellant argues that the paramedics acted in a wanton and wilful manner because they (1) failed to comply with "operating protocol" when they did not transport the decedent to the hospital, (2) failed to comply with "EMT curriculum requirements for the treatment of an intoxicated patient," (3) violated EMS rules by failing to obtain and record the decedent's biographical and medical history, (4) failed to "conduct simple procedures and disregard[ed] the significance of outward symptoms," and (5) permitted the decedent to refuse further treatment.

Our review of the appropriateness of summary judgment is *de novo*. The standard of review in summary judgment cases is well established. "Pursuant to Civ.R. 56, summary judgment is appropriate when (1) there is no genuine issue of

material fact, (2) the moving party is entitled to judgment as a matter of law, and (3) reasonable minds can come to but one conclusion and that conclusion is adverse to the nonmoving party, said party being entitled to have the evidence construed most strongly in his favor." *Zivich v. Mentor Soccer Club, Inc.* (1998), 82 Ohio St.3d 367, 369–370, 696 N.E.2d 201, 204.

We begin with the claim that the paramedics acted in a wilful and wanton manner by failing to obtain a history. In support, appellant refers to the report filed by the paramedics, which fails to list her husband's age, marital status, address, phone number, or Social Security number.[1] Appellant also contends that the paramedics failed to collect information in regard to Denham's family physician or his "history, current medications, allergies, or even facts concerning his unconscious condition." She further claims that the failure to obtain a history violated the provisions of a document titled "New Carlisle Fire Division Standard Operating Procedures." The document was supplied to appellant by the city in response to discovery requests. According to the document, EMS reports must be "completely filled out without blanks" and must contain "accurate and detailed summar[ies]."

Appellant does not state, nor can we discern, how the failure to obtain Denham's age, marital status, address, phone number or Social Security number affected his treatment by the paramedics. Appellant does not claim, nor is there evidence to suggest, that the paramedics did not attempt to obtain information regarding her husband's medical history or condition. Moreover, there is no evidence that Denham was taking any medications or that he had any significant medical history or allergies that should have been noted. In fact, a review of the EMS report shows that the spaces provided for this information contain a symbol that can be interpreted as meaning that Denham was not on any medications and that he had no significant medical history or allergies.

Furthermore, a review of the EMS report does not support a claim that the paramedics failed to comply with standard operating procedures for completing the report. The report sets forth a summary regarding "signs and symptoms," as well as comments regarding the incident. As stated above, the paramedics filled out the other items at issue with a symbol, thereby negating any claim that blanks were left on the report. Based upon the record before us, we conclude

---

1. The city contends that none of the documents relied upon by appellant in her argument can be considered because they were not properly authenticated, and, thus, were not admissible for purposes of Civ.R. 56(C). We note that the city did not object, in the trial court, to the inclusion or consideration of the documents. Furthermore, it is not clear from the trial court's decision whether the documents were considered. Although we agree that the documents were not appropriately authenticated, we have reviewed them, since the city did not object to their lack of authentication.

that the paramedics completed the report form and complied with the standard operating procedures. The record does not support a claim of wilful or wanton misconduct in relation to this claim.

 We next turn to the claim that the paramedics' conduct was wilful and wanton because they failed to perform certain procedures. In support, appellant relies upon the sworn statement of her expert, Shelby Louden, a licensed EMT, who opined that the conduct of the paramedics in this case constituted wilful and wanton misconduct because of their failure to take certain actions.

Specifically, Louden stated that the paramedics should have taken Denham's blood pressure and pulse, which might have revealed symptoms of a head injury. This statement ignores the fact that the paramedics were not able to examine Denham, who acted in a belligerent manner, was uncooperative, and ordered them to stay away from him. Although Louden suggested that the paramedics should have treated the matter as an "implied consent" case, he does not go so far as to suggest that the paramedics should have physically restrained Denham in order to examine him. Furthermore, the record does not contain evidence to indicate that, despite his extreme intoxication, Denham was incapable of knowingly refusing treatment. Finally, Louden did not state that having taken blood pressure or pulse measurements would have altered the outcome of this case.

Louden also opined that the fact that Denham had "emesis," or vomiting, a fact noted on the EMS report, "should have alerted the personnel that he could very well aspirate with this particular condition." He also noted that the report stated that Denham suffered from "dry heaves," a symptom that could induce fatal bleeding in the esophagus. Denham did not aspirate or have esophageal bleeding.

Louden also stated that he would have taken a history from witnesses and friends at the scene and that he probably would have transported Denham to the hospital. We note that there is no evidence in the record that any of the witnesses at the bar were aware of Denham's medical history. Moreover, there is evidence that the paramedics did inquire about the circumstances of the call, that they were informed that there had been a physical altercation, but that the only information provided was by Adkins, who informed them that Denham was intoxicated. Also, the mere fact that another EMT "probably" would have transported a patient to a hospital may raise an inference of negligence but does not establish wilful and wanton misconduct.

We next address the claim that the paramedics failed to comply with their "operating protocol" by failing to take Denham to the hospital. In support, appellant relies on a document titled "Emergency Medical Services Pre–Hospital Operating Protocol (Adult) Clark County, Ohio," which was provided by the city

as a response to a discovery request. According to the document, EMS personnel are advised that certain circumstances necessitate immediate transport of patients to the hospital; they are referred to as "load and go" situations. The document refers to "head injury with unconsciousness, unequal pupils, or decreasing level of consciousness" as a "load and go" situation.

Appellant argues that the paramedics should have known that her husband suffered from a head injury because they knew that he was involved in a physical altercation and because he had a laceration and bleeding.[2] We disagree. There is no evidence to indicate that any blood was still present on Denham when the paramedics arrived approximately ten minutes after the deputy sheriff, or that anyone informed them that he had been bleeding. To the contrary, the report filed by the paramedics indicated that Denham had no apparent injuries.

Moreover, there is no evidence to indicate that the EMTs had any reason to believe that Denham had suffered a head injury as a result of the altercation. The affidavits filed by the paramedics indicate that Denham was seated in a chair when they arrived at the scene; there is no evidence that he was unconscious when they arrived. Further, their report indicates that he was stuporous, but that he responded immediately to an ammonia capsule. There is no indication that he had unequal pupils or a decreasing level of consciousness. There is no evidence in the record to indicate that anyone, including Denham, informed them that he had suffered a blow to the head or that he had hit his head. Instead, both Denham and Adkins simply informed the paramedics that Denham was very intoxicated.

In sum, we can find no evidence in the record to support a finding that the paramedics had any reason to believe that Denham suffered from anything other than severe intoxication. Therefore, we cannot say that their failure to treat the matter as a "load and go" situation constituted wilful and wanton misconduct.

Appellant next claims that the paramedics failed to comply with requirements for the treatment of intoxicated patients. Again, appellant relies upon an excerpt from a document produced by the city in its responses to discovery requests. The excerpt indicates that intoxicated patients must be examined because they frequently, without being aware of it, also suffer from illness or injury, including head trauma. The passage further indicates that it is "critical" to transport patients for evaluation by a physician, and that, in some states, intoxicated patients cannot refuse transport.

---

2. Appellant's claim that her husband had a laceration and was bleeding was based upon the report of the deputy sheriff who responded to the scene. The report indicated that "Mr. Denham appeared to have a laceration between his eyes and minor bleeding from the mouth."

Again, although the paramedics attempted to examine him, and in fact were able to note some physical findings, Denham refused to be examined or treated. There was no evidence that the paramedics had any reason to suspect a head injury.

The paramedics responded to a call involving a man who had fallen on ice and was unconscious. When they arrived, they found an intoxicated individual in a stuporous condition sitting on a bar stool. While they were informed that a physical altercation had occurred, they were not advised of any trauma to Denham's head, and they noted no apparent injuries to indicate head trauma. The paramedics attempted to examine and treat Denham, but he refused both treatment and transport. Both Denham and his friend, Adkins, merely informed the paramedics that he was intoxicated. There is no evidence to indicate that Denham was incapable of making an informed decision to forgo treatment. The paramedics helped Denham get into the car driven by Mrs. Adkins. They informed the Adkinses to make sure that Denham slept on his stomach to prevent aspiration and told them to call emergency services if his condition worsened.

We have said that in order to find wilful and wanton misconduct as a result of an omission to act, there must be evidence that the actor was aware of great probability that harm would result. *Addis v. Howell* (2000), 137 Ohio App.3d 54, 738 N.E.2d 37. In the case before us, there is insufficient evidence that the paramedics were aware that there was any great probability that their failure to do more than they did would result in harm to appellant's decedent.

Although the paramedics were arguably negligent, the evidence in this record does not demonstrate more than negligence on their part. It falls short of establishing wilful and wanton misconduct, even when viewed in a light most favorable to the appellant. Therefore, we conclude that the trial court properly rendered summary judgment. Accordingly, the second assignment of error is overruled.

## IV

Both of appellant's assignments of error are overruled, and the judgment of the trial court is affirmed.

*Judgment affirmed.*

GRADY, P.J., and BROGAN, J., concur.