DECISION AND JUDGMENT ENTRY
{¶ 1} Ernest and Peggy Sabo ("the Sabos") appeal the trial court's grant of summary judgment to Hollister Water Association, Inc. ("HWA"). They contend the trial court committed procedural error by ruling on the summary judgment motion while they were still seeking additional discovery and by reversing its prior decision denying summary judgment. Because the Sabos did not provide sufficient facts to support their contention that they needed a continuance under Civ.R. 56(F), we conclude the trial court did not abuse its discretion by addressing the second motion for summary judgment. And, because the denial of a summary judgment motion is not a final order, the trial court could reconsider its prior decision at any time.
 {¶ 2} The Sabos also contend that genuine material issues of fact remain *Page 2 
concerning whether HWA breached its contract with them by refusing to install a 1-inch tap on their property, disconnecting their water service, and failing to transfer a membership to them when they purchased property from an existing member. We find that no genuine factual issues exist. The contract did not provide for the installation of a 1-inch tap on a member's property. The Sabos violated the terms of their contract with HWA and, thus, the contract permitted the company to discontinue their service for failing to comply with the rules. And, nothing in the contract precluded HWA from requiring the Sabos to sign a Water Users Agreement before transferring an existing membership to them. Therefore, we affirm the trial court's grant of summary judgment.
 I. Facts {¶ 3} HWA incorporated on September 7, 1965 for the purpose of constructing, operating and maintaining a private water system. The Burr Oak Water Association, now known as the Burr Oak Regional Water District ("Burr Oak"), supplies bulk water to HWA, and HWA then sells filtered water to its members. As a condition of its loan agreement with the Farmers Home Administration of the U.S. Department of Agriculture, HWA had to adopt Rules and Regulations ("Rules") approved by the Administration, which it did in December 1966. In compliance with R.C.1702.10, HWA's membership also adopted a Code of Regulations and By-Laws ("By-Laws") in July 1992.
 {¶ 4} In 1990, the Sabos purchased a ten acre lot with two houses near Glouster, Ohio. A single ¾-inch tap provided water to both dwellings and HWA supplied the water. However, in 1992, HWA notified its members that the use of *Page 3 
"double dwelling hook-ups," such as the ¾-inch tap providing water service to two residences, violated HWA's governing documents and must be replaced with separate taps and meters for each structure or improvement.
 {¶ 5} In response to this notification, the Sabos informed HWA that they intended to develop their property and requested the installation of a 1-inch "master meter" on their property to service "6-8 homes and perhaps a small laundromat." HWA denied the Sabos' request after concluding that its governing documents did not provide for the use of 1-inch taps, and a ¾-inch tap would supply sufficient water for the proposed usage. The Sabos made several additional requests for the installation of a 1-inch tap on their property over the years, but HWA either denied or ignored them.
 {¶ 6} Because the Sabos had not removed the double dwelling hook-up from their property and installed separate taps, HWA disconnected their water service in March 1994. So, the Sabos drilled artisan wells to provide water service to the property. In 2003, the Sabos asked HWA for a release from the association so they could obtain water directly from Burr Oak, and HWA complied. However, HWA apparently billed the Sabos for the monthly minimum fee on their property from the time HWA disconnected the water service until the Sabos obtained the release.
 {¶ 7} In March 2004, the Sabos purchased property that is contiguous to the property they already owned. The Sabos and the seller, Ms. Withem, notified HWA of their intent to transfer Ms. Withem's membership in HWA to the Sabos. HWA denied the requested transfer, noting that the Sabos owed a large back *Page 4 
water bill on their other property. HWA also informed the Sabos that it no longer transferred memberships and they could become members again only if they signed a new Water User's Agreement. The Sabos signed the Agreement, but crossed out "Section 8," which dealt with liquidated damages, on the advice of their attorney; HWA refused to accept the modified Agreement.
 {¶ 8} In September 2004, the Sabos filed a complaint against HWA alleging that it failed to abide by its Articles of Incorporation and By-Laws. They also alleged HWA was liable for disconnecting their water service in March 1994, refusing to provide them with commercial water service despite numerous requests, and refusing to transfer Ms. Withem's HWA membership to them.
 {¶ 9} In June 2005, HWA filed a motion for summary judgment that the trial court overruled. In January 2006, HWA filed a motion for partial summary judgment based on the same arguments it had previously presented. The trial court granted HWA's motion for partial summary judgment finding: (1) that HWA was not required to provide a 1-inch tap to the Sabos when they requested it; (2) that HWA was permitted under Ohio law and its governing documents to establish a policy discontinuing double dwelling hook-ups; (3) that HWA was not required to automatically transfer memberships and, although it had the discretion to forego a new Water User's Agreement, nothing prevented it from requiring it; and (4) that HWA was not required to accept the signed Water User's Agreement with Section 8 deleted and it was not an adhesion contract. After HWA moved to amend its motion for partial summary judgment to a motion for summary judgment, the trial court amended its entry to include "no just reason for *Page 5 
delay" language and noted that the previous judgment decided all claims.
 II. Assignment of Error {¶ 10} The Sabos filed a timely notice of appeal, assigning the following error:
 The Trial Court committed prejudicial error by granting partial summary judgment in its Order journalized February 15, 2006 violating Plaintiffs procedural and substantive rights to a fair trial.
 {¶ 11} Before addressing the Sabos' contention that genuine issues of material fact exist, we examine several procedural matters.
 III. Procedural Challenges to Summary Judgment A. The Status of Discovery {¶ 12} The Sabos contend that the trial court erred by granting summary judgment because they were still in the process of discovery and actively seeking information that may add additional evidence to their case. They contend they were prejudiced by not being allowed to complete discovery before replying to HWA's motion. HWA disputes the Sabos' contention that they did not have ample time to build their case because the trial court waited one month past the discovery cut-off before ruling on the motion. HWA also argues the Sabos failed to make a proper Civ.R. 56(F) request for additional time to complete discovery.
 {¶ 13} Civ.R. 56(F) states:
 Should it appear from the affidavits of a party opposing the motion for summary judgment that the party cannot for sufficient reasons stated present by affidavit facts essential to justify the party's opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or discovery to be had or *Page 6 
may make such other order as is just.
A trial court enjoys broad discretion when ruling on a Civ.R. 56(F) motion for additional discovery. McGuire v. Draper, Hollenbaugh andBriscoe Co., L.P.A., Highland App. No. 01CA21, 2002-Ohio-6170 at ¶ 92. Absent an abuse of that discretion, a reviewing court will not reverse the trial court's decision. Id. The term abuse of discretion connotes more than error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable. Blakemore v.Blakemore (1983), 5 Ohio St.3d 217, 219, 450 N.E.2d 1140.
 {¶ 14} The Sabos argued in their memorandum in opposition that the court's granting leave for HWA to file a motion for summary judgment was improper because facts were still being discovered. However, the Sabos never invoked or complied with Civ.R. 56(F) in requesting additional time for discovery. Nonetheless, in, McGuire at ¶ 88, we noted that a party's failure to specifically invoke Civ.R. 56(F) when requesting additional time to conduct discovery is "not determinative of whether the trial court should have allowed additional discovery." See, also,Tucker v. Webb Corp. (1983), 4 Ohio St.3d 121, 122, 447 N.E.2d 100. But the rule does require that a party seeking a continuance provide the trial court with sufficient reasons to explain why they are entitled to additional time to prepare a response to the motion. See Denham v. NewCarlisle (2000), 138 Ohio App.3d 439, 443, 741 N.E.2d 587, quotingGates Mills Invest. Co. v. Pepper Pike (1978), 59 Ohio App.2d 155, 169,392 N.E.2d 1316.
 {¶ 15} Here, the trial court did not abuse its discretion by refusing to grant the Sabos a continuance to conduct further discovery. First, the discovery *Page 7 
deadline had already passed. Second, the Sabos never sufficiently explained-including on appeal — how additional discovery would have aided them in rebutting HWA's motion for partial summary judgment. They make only general references to information that "may" have added additional evidence to their case, particularly addressing factual questions. However, both the parties and the trial court treated this matter as a breach of contract dispute requiring a legal interpretation of written documents. The factual evidence played a very limited role in that analysis. Thus, the Sabos failed to establish how additional time would have led to the existence of a genuine issue of material fact. SeeBall v. Hilton Hotels, Inc. (1972), 32 Ohio App.2d 293, 290 N.E.2d 859. The court did not abuse its discretion in refusing to grant a continuance before ruling on the summary judgment motion.
 B. Reconsideration of Summary Judgment {¶ 16} The Sabos also contend that the trial court committed procedural error by granting summary judgment after denying HWA's earlier request. They argue that the court impermissibly reconsidered its decision because HWA did not present any new evidence and its motion was not based on a new statute or case law.
 {¶ 17} A trial court's denial of a motion for summary judgment is an interlocutory decision, not a final order or final judgment.Vaccariello v. Smith Nephew Richards, Inc., 94 Ohio St.3d 380, 386,2002-Ohio-892, 763 N.E.2d 160. As an interlocutory decision, it is subject to reconsideration at any time prior to a decision entering final judgment in a case. Davis v. Becton Dickinson Co. *Page 8 
(1998), 127 Ohio App.3d 203, 207, 711 N.E.2d 1098; Citizens Fed. Bank,F.S.B. v. Brickler (1996), 114 Ohio App.3d 401, 411, 683 N.E.2d 358. Because the court had not entered a final judgment in this case, it did not err by reconsidering its original denial of the summary judgment motion.
 IV. Substantive Challenges to Summary Judgment A. Standard of Review {¶ 18} In reviewing a summary judgment, the lower court and the appellate court utilize the same standard, i.e., we review the judgment independently and without deference to the trial court's determination.Doe v. Shaffer, 90 Ohio St.3d 388, 390, 2000-Ohio-186, 738 N.E.2d 1243,1245. Summary judgment is appropriate only when: (1) there is no genuine issue of material fact; (2) reasonable minds can come to but one conclusion when viewing the evidence in favor of the nonmoving party, and that conclusion is adverse to the nonmoving party; and (3) the moving party is entitled to judgment as a matter of law. Id. See, also,Bostic v. Connor (1988), 37 Ohio St.3d 144, 146, 524 N.E.2d 881 and Civ.R. 56(C). The burden of showing that no genuine issue exists as to any material fact falls upon the moving party. Mitseff v. Wheeler
(1988), 38 Ohio St.3d 112, 115, 526 N.E.2d 798. If the moving party satisfies this burden, the nonmoving party then has a reciprocal burden outlined in Civ.R. 56(E) to set forth specific facts showing there is a genuine issue for trial. If the nonmovant does not satisfy this evidentiary burden and the movant is entitled to judgment as a matter of law, the court should enter summary judgment accordingly. Kulch v.Structural Fibers, Inc., 78 Ohio St.3d 134, 145, 1997-Ohio- *Page 9 
219, 677 N.E.2d 308, citing Dresher v. Burt (1996), 75 Ohio St.3d 280,295, 662 N.E.2d 264.
 B. Law Regarding Contract Interpretation {¶ 19} Although it is unclear from their complaint, the Sabos apparently relied on a breach of contract theory in pursuing their claims. Therefore, we briefly examine the law regarding contract interpretation.
 {¶ 20} When the terms of a contract are unambiguous, courts look to the plain language of the document and interpret it as a matter of law.Latina v. Woodpath Dev. Co. (1991), 57 Ohio St.3d 212, 214,567 N.E.2d 262, 264-265; Alexander v. Buckeye Pipe Line Co. (1978),53 Ohio St.2d 241, 374 N.E.2d 146, paragraph one of the syllabus. Extrinsic evidence is admissible to ascertain the intent of the parties when the contract is unclear or ambiguous, or when circumstances surrounding the agreement give the plain language special meaning. Shifrin v. Forest City Ent,Inc., 64 Ohio St.3d 635, 638, 1992-Ohio-28, 597 N.E.2d 499, 501-502.
 {¶ 21} The parties agree that HWA's Articles of Incorporation, Rules, By-Laws, and the Water User's Agreement, constitute the contract between HWA and the Sabos. See The Hermitage Club Co., Inc. v. Powers (1995),107 Ohio App.3d 321, 326, 668 N.E.2d 955, appeal denied (1996),75 Ohio St.3d 1477, 663 N.E.2d 1304.
 C. Denial of "Commercial Service" to the Sabos {¶ 22} First, the Sabos contend that HWA breached its contract with them by refusing to provide commercial service, i.e. a 1-inch tap, to their property. In *Page 10 
support of their argument, the Sabos cite Article III of the Articles of Incorporation, which states:
 The purposes of the said corporation shall be to associate its members together for their mutual benefit and to that end to construct, maintain, and operate a private water system for the supplying of water for domestic, livestock, garden, industrial and commercial purposes * * *
They further contend that HWA essentially denied them membership by refusing to provide the 1-inch tap, that membership can only be denied when the water system is exhausted and the proposed use would interfere with existing usage, and there was no evidence their use of a 1-inch tap would prejudice the existing membership.
 {¶ 23} The plain language of Article III states only that HWA will provide water service for commercial purposes. It does not, however, control or regulate how to accomplish that service, nor does it spell out the duties and responsibilities of HWA to their members in that regard. Therefore, the Sabos are not entitled to a 1-inch tap under this provision. Because HWA agreed to provide commercial water service to the Sabos, it complied with Article III. The issuance of a 1-inch tap could be addressed by the Water User's Agreement or the By-Laws, but the Sabos have not identified any provision in those documents that require HWA to provide it.
 D. Disconnection of Water Service {¶ 24} Second, the Sabos argue that HWA breached the contract by wrongfully disconnecting their water service. HWA responds that it was *Page 11 
authorized to terminate the Sabos' service when they refused to disconnect their double dwelling hook-up and install separate taps for each building.
 {¶ 25} HWA's Rules and Regulations state:
 VI. Member's Responsibility
 1. Water furnished by the company shall be used for domestic consumption, members of his household, and employees only. The member shall not sell water to any other person or permit any other person to use said water. * * * Disregard for this rule shall be sufficient cause for refusal or discontinuance of service.
Further, Section III(D) states:
 Water furnished for a given lots or farmstead shall be used on that lot only. Each member's service must be separately metered at a single delivery and metering point. All commercial use, including storerooms and stalls for business purposes shall be metered separately from any residential use, and vice versa.
Section XI states:
 * * *
 E. The Company reserves the right to discontinue its service without notice for the following additional reasons:
 2. Consumers' willful disregard of the Company's Rules.
Additionally, the Water Users' Agreement in effect at the time states at ¶ 8:
 The CORPORATION shall make the final determination in any question of location of any service line connection to its distribution system; shall determine the allocation of water to CUSTOMER in the event of a water shortage; and may shut off water to a CUSTOMER who allows or upon notice *Page 12 continues to allow a connection or extension to be made to his or her service line for the purpose of supplying water to another party. * * * (Emphasis added.)
 {¶ 26} HWA acknowledges that it allowed members to use double hookups in violation of its Rules beginning in the late 1970s. HWA permitted these double hook-ups because Burr Oak imposed a freeze on additional water taps due to water system shortages. To circumvent this freeze, some members began connecting multiple dwellings to one tap. In 1992, the HWA Board of Directors voted to disallow the double-hookups and began enforcing the Rules prohibiting their use.
 {¶ 27} Section VI of the Rules clearly prohibits members of HWA from providing water to those who are not members of their household or employees, thereby outlawing the use of double hook-ups to provide water to another household. The Sabos never disputed that they were using a double hook-up to provide water to two separate buildings. Instead, they contend that they were treated differently than other members regarding their double hook-up. However, the Sabos cite no statute or case law providing a cause of action for "unequal enforcement" of the Rules. Nor do they provide any evidence to substantiate their claim of illegal discrimination.
 {¶ 28} Section VI and the Water User's Agreement ban double hook-ups. Even after being informed that they needed to remove the double hook-up and attach separate taps to each building, the Sabos failed to comply with the Rules. Accordingly, HWA was authorized to disconnect the Sabos' water service under Sections VI and XI of the Rules and ¶ 8 of the Water User's Agreement. *Page 13 
 F. Failure to Transfer Membership {¶ 29} Third, the Sabos contend that HWA wrongfully failed to transfer Florence Withem's membership to them when they purchased property from her. The Sabos rely upon Article I(c) of the By-Laws, which states:
 Water user agreements shall be transferable but the transfer will be effective only when noted on the books of the corporation. Such transfer will be made only to a person who obtains a qualifying interest in the property, and providing that a membership shall not be transferable until all indebtedness to the corporation of the person holding same has been paid in full. The secretary, upon request, will make note of such transfer upon the records of the corporation but need not issue a new agreement to the successor in interest of the previous existing member.
They also contend that, although they were previously released from HWA, the release applied only to the original property they owned and had nothing to do with retaining association membership or the Withem property. Thus, they argue they were already governed by the Water User's Agreement from their membership and should not be required to sign the Revised Water User's Agreement, which contained a liquidated damages provision. Finally, the Sabos contend that the Revised Agreement was an unconscionable adhesion contract because they were unable to obtain water services from another provider.
 {¶ 30} The document issued by HWA to the Sabos states that the Sabos asked to be released from HWA so they could apply for water from Burr Oak and "[s]ince the Hollister Water Association, Inc. will not provide the type of service that the Sabo's [sic] are requesting, the Hollister Water Board of Trustees are therefore releasing them from the district." The release did not specify that it *Page 14 
pertained only to a certain property. Therefore, we conclude that the Sabos were released from HWA membership entirely, not just for purposes of obtaining water for the original property they owned. Consequently, the original Water User Agreement was not binding once they left HWA.
 {¶ 31} After the Sabos left HWA, it adopted a Revised Water User's Agreement, which contains a liquidated damages provision. The Sabos argue that HWA was not authorized to amend the earlier version of the Water Users Agreement to include the liquidated damages provision because it provided no additional consideration to its members in exchange for their agreement to additional terms. Even assuming this argument has merit, it would not affect the Sabos because they were released from HWA and were agreeing to a new contract. Therefore, whether HWA provided additional consideration to its existing membership is not relevant to the Sabos' claims.
 {¶ 32} The Sabos also argue that they did not need to sign the Revised Water User's Agreement because Ms. Withem's membership should have simply transferred to them. Section II(A) of the Rules provides that:
 * * * Persons who receive the approval of the board of directors may be admitted to membership upon subscribing for a membership certificate and by signing such agreements for the purchase of water as may be provided and required by the company* * *. (Emphasis added.)
Further, Article VI of the Rules provides that anyone who wants to join the HWA water system "will be admitted to membership upon subscribing for and otherwise acquiring a membership certificate and by signing such agreements for the purchase of water as may be provided and required by the corporation." *Page 15 
Article I(a) of the By-Laws contains similar language.
 {¶ 33} Article I(c) of the By-Laws authorized the transfer of Water User Agreements and also states that the secretary "need not" issue a new agreement. It does not, however, prohibit HWA from issuing a new agreement and requiring a prospective member to sign it. We agree with the trial court's finding that the contractual provisions permitted HWA to require that new, i.e., "renewing," members sign an Agreement. It was not obligated to accept the new Agreement with Section 8 deleted.
 {¶ 34} Finally, the Sabos contend that they did not need to sign the Revised Water Users Agreement because it was an unconscionable adhesion contract. Black's Law Dictionary (5Ed. 1979) 38, defines an adhesion contract as a "standardized contract form offered to consumers of goods and services on essentially `take it or leave it' basis without affording consumer realistic opportunity to bargain and under such circumstances that consumer cannot obtain desired product or services except by acquiescing in form contract." Sekeres v. Arbaugh (1987),31 Ohio St.3d 24, 31, 508 N.E.2d 941 (Brown, J., dissenting), quotingWheeler v. St. Joseph Hosp. (1976), 63 Cal.App.3d 345, 356, 133 Cal.Rptr. 775. Under Ohio law, a contract is unconscionable when there is the absence of meaningful choice on the part of one of the parties to a contract, combined with contract terms that are unreasonably favorable to the other party. Collins v. Click Camera Video, Inc. (1993),86 Ohio App.3d 826, 834, 621 N.E.2d 1294.
 {¶ 35} Here, the Sabos contend that they could only obtain water from *Page 16 
HWA and, therefore, the contract was unconscionable. However, the evidence does not support their argument. The Sabos sought and obtained release from HWA so they could obtain water service directly from Burr Oak. Moreover, as they had done previously, the Sabos could have drilled artisan wells on the newly acquired property. We conclude that the Revised Water Users Agreement was not an unconscionable adhesion contract.
 {¶ 36} Therefore, there are no genuine factual disputes surrounding HWA's refusal to transfer Ms. Withem's Agreement to the Sabos.[1] And HWA was entitled to do so as a matter of law.
 V. Conclusion {¶ 37} Finding that the trial court did not commit any procedural error in granting the motion for summary judgment, that no genuine issues of material fact exist and that HWA was entitled to judgment as a matter of law, we overrule the Sabos' sole assignment of error.
 JUDGMENT AFFIRMED. *Page 17 
 JUDGMENT ENTRY
It is ordered that the JUDGMENT BE AFFIRMED and that Appellee recover of Appellants costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Athens County Common Pleas Court to carry this judgment into execution.
Any stay previously granted by this Court is hereby terminated as of the date of this entry.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure. Exceptions.
McFarland, P.J. Kline, J.: Concur in Judgment and Opinion.
[1] Because the parties do not address it, other than in passing reference, we do not address the issue of the back bill allegedly owed by the Sabos. It appears from their brief that HWA has since dropped the claim that the Sabos owe a back bill.
 *Page 1