DECISION AND JUDGMENT ENTRY
{¶ 1} This is an appeal from a Highland County Common Pleas Court summary judgment in favor of Reminger and Reminger Co., L.P.A. and Nicholas D. Satullo, defendants below and appellees herein.[1] The trial court determined that no genuine issues of material fact remained for resolution regarding whether appellees (1) committed legal malpractice, (2) converted another's property, and (3) spoilated evidence.
 {¶ 2} John M. McGuire, plaintiff below and appellant herein, raises the following assignments of error:
FIRST ASSIGNMENT OF ERROR:
 {¶ 3} "THE TRIAL COURT ERRED TO THE DETRIMENT OF APPELLANT BY SUSTAINING THE APPELLEES' MOTIONS FOR SUMMARY JUDGMENT."
SECOND ASSIGNMENT OF ERROR:
 {¶ 4} "THE TRIAL COURT ERRED TO THE DETRIMENT OF APPELLANT BY ENTERTAINING APPELLEES [SIC] FIRST SUMMARY JUDGMENT WITHOUT ALLOWING APPELLANT TO CONDUCT DISCOVERY."
THIRD ASSIGNMENT OF ERROR:
 {¶ 5} "WHETHER THE TRIAL COURT IMPROPERLY DENIED DISCOVERY FROM ZURICH."[2]
 {¶ 6} Appellees raise the following cross-assignment of error:
 {¶ 7} "THE TRIAL COURT SHOULD HAVE GRANTED SATULLO AND REMINGER AND REMINGER SUMMARY JUDGMENT AS TO THE CLAIM OF CONVERSION AT THE SAME TIME THAT IT DECIDED THAT THE LEGAL MALPRACTICE CLAIM AGAINST SATULLO COULD NOT SURVIVE."
 {¶ 8} On February 11, 1995, K-Mart Corporation (K-Mart) terminated appellant's employment. In June of 1995, appellant retained the law firm of Draper, Hollenbaugh and Briscoe, Co., L.P.A. Co., H. Ritchey Hollenbaugh, and David L. Petitjean (the Hollenbaugh defendants) to represent him in a wrongful discharge action against K-Mart.
 {¶ 9} On August 14, 1995, the Hollenbaugh defendants filed a complaint on appellant's behalf against K-Mart. The complaint alleged that K-Mart unlawfully terminated appellant on the basis of age, in violation of R.C. 4112.02. Subsequently, the complaint was dismissed for the failure to file within the applicable statute of limitations.
 {¶ 10} The Hollenbaugh defendants notified appellant of his rights against them and contacted their insurance carrier, Zurich-American InsuranceGroup (Zurich). Zurich, in turn, referred the matter to appellees.
 {¶ 11} Hollenbaugh consulted with Satullo regarding appellant's potential claim for malpractice. In order to protect against further malpractice claims and also to limit any potential liability, Satullo recommended, and Hollenbaugh agreed, that a second complaint alleging alternative theories of relief should be filed on appellant's behalf against K-Mart.
 {¶ 12} Although Satullo recommended filing the second complaint, the Hollenbaugh defendants independently analyzed the alternative theories of relief to present in the second complaint and independently drafted the second complaint. The Hollenbaugh defendants sent Satullo a copy of the second complaint. Subsequently, the second complaint was dismissed based on res judicata.
 {¶ 13} On March 20, 2000, appellant filed an amended complaint against the Hollenbaugh defendants and the appellees. In his complaint, appellant asserted various claims, including legal malpractice. Appellant alleged that the Hollenbaugh defendants breached the standard of care by failing to file the initial complaint within the statute of limitations period. As to the appellees, appellant claimed that after the Hollenbaugh defendants filed the complaint, they consulted with appellees and that the Hollenbaugh defendants and the appellees failed to amend the complaint prior to the dismissal to include additional causes of action that may not have been time barred. Appellant further alleged that appellees converted his client file and spoilated evidence. Appellant asserted that in September of 1998, Hollenbaugh forwarded appellant's client file to Satullo. Appellant claimed that he repeatedly requested possession of his original file, but Satullo refused to return the original file.
 {¶ 14} On June 20, 2000, appellees filed a summary judgment motion and asserted that they are immune from liability to appellant. Appellees claimed that because they did not represent appellant, but instead represented the Hollenbaugh defendants in advising them about appellant's potential legal malpractice claim, no attorney-client relationship existed. Appellees argued that without an attorney-client relationship, they could not be liable to appellant for legal malpractice. Appellees further asserted that privity did not exist to substitute for an attorney-client relationship.
 {¶ 15} With respect to appellant's claims for conversion and spoilation of evidence, appellees argued that no evidence exists that they acted with malice. Appellees further asserted that they did not wrongfully convert appellant's client file. Instead, appellees claimed that they held a valid attorney's retaining lien over the file, as appellant had not paid legal fees to the Hollenbaugh defendants.
 {¶ 16} In support of their motion for summary judgment, appellees referred to Satullo's affidavit. Satullo averred that the Hollenbaugh defendants retained him to protect their rights in any legal malpractice claim that appellant may have had. Satullo stated that he "functioned strictly as counsel for" the Hollenbaugh defendants. Satullo further stated that he did not (1) meet appellant, and that he had just one phone conversation with him; and (2) participate in drafting the second complaint filed against K-Mart. Regarding appellant's claim for conversion, Satullo admitted that he did not immediately return appellant's client file. Satullo stated, however, that he believed that an attorney lien existed on the file.
 {¶ 17} Appellees also attached Hollenbaugh's affidavit. Hollenbaugh stated that after the initial complaint was dismissed, he advised appellant of his recourse and submitted the matter to his insurance carrier. The insurance carrier then referred the matter to appellees. Hollenbaugh stated:
 {¶ 18} "At all times, [appellant] was apprised by [Hollenbaugh] that (a) the matter had been submitted to our insurance carrier for review; (b) that there was a lawyer appointed by that insurance carrier who made recommendations; and (c) the identity of that lawyer was disclosed to [appellant], when various correspondence to [appellant] were openly copied to that lawyer."
 {¶ 19} Hollenbaugh further stated that appellant "indicated an understanding that * * * [the Hollenbaugh defendants] had [their] own counsel."
 {¶ 20} In opposition to appellees' summary judgment motion, appellant argued that an attorney-client relationship existed between him and appellees. Appellant claimed not to know of the precise nature of the relationship between the Hollenbaugh defendants and appellees and asserted that he reasonably believed that appellees acted on his behalf. Appellant also asserted that Hollenbaugh's disclosure of appellant's confidential information to appellees created an attorney-client relationship between appellant and appellees. With respect to his conversion claim, appellant argued that appellees acted maliciously by failing to return his file and by asserting a false attorney lien.
 {¶ 21} In support of his argument, appellant's affidavit noted that Hollenbaugh told appellant that the insurance carrier thought of the idea of filing the second complaint. Appellant further stated that he did not know that the Hollenbaugh defendants had retained counsel. Appellant also requested the trial court to allow additional discovery before ruling upon appellees' summary judgment motion.
 {¶ 22} On September 7, 2000, the trial court granted summary judgment in appellees' favor regarding appellant's legal malpractice claim, but denied summary judgment regarding the remaining claims against appellees. The trial court determined that no attorney-client relationship existed between appellant and appellees. The trial court stated:
 {¶ 23} "The unrefuted factual information contained in the pertinent material heretofore mentioned is that Mr. Satullo's only action in this case was legal advice to the Hollenbaugh law firm for the purpose of reducing any liability the Hollenbaugh firm may have incurred in handling the underlying legal action between the plaintiff and Kmart. The fact that such advice and Hollenbaugh's subsequent action as to such claim may have been beneficial to the plaintiff does not, without some further action, on part of Satullo create an attorney-client relationship between the plaintiff and these defendants."
 {¶ 24} The trial court further determined that no privity existed to substitute for an attorney-client relationship.
 {¶ 25} On November 9, 2001, appellees filed a summary judgment motion as to the spoilation claim and renewed their summary judgment motion on the conversion claim. Appellees argued that they did not wrongfully convert appellant's client file because they possessed a good faith belief that an attorney lien existed that entitled them to withhold the file. Appellees stated that they contacted Hollenbaugh to determine whether appellant had paid any legal fees owed to Hollenbaugh and that Hollenbaugh advised them that pursuant to the fee agreement, appellant owed over $2,669 in legal expenses. Appellees contended that when an attorney possesses a good faith belief that an attorney's lien exists on a client's file, the attorney cannot be liable for conversion.
 {¶ 26} Appellees further asserted that in the absence of privity, liability for conversion cannot attach. Appellees also argued that the record contains no evidence that they acted maliciously in withholding appellant's client file.
 {¶ 27} With respect to appellant's spoilation of evidence claim, appellees asserted that no evidence exists that any alleged absence of documents prevented appellant from pursuing his case. Appellees additionally claimed that minor discrepancies between the original file and the copied file do not sufficiently demonstrate spoilation of evidence and that no evidence exists that they willfully spoilated any evidence.
 {¶ 28} On December 10, 2001, the trial court granted appellees' summary judgment motion with respect to appellant's claims for conversion and spoilation of evidence. Appellant filed a timely notice of appeal.
 I {¶ 29} In his first assignment of error, appellant asserts that the trial court erred by granting summary judgment and determining that no genuine issues of material fact remain as to whether: (1) appellant may maintain a legal malpractice action against appellees; and (2) appellees spoilated evidence. Within his first assignment of error, appellant raises several issues including whether: (1) an attorney-client relationship existed between appellant and appellees; (2) appellant was in privity with appellees; (3) appellees acted maliciously; (4) the trial court improperly weighed the evidence; and (5) appellees spoilated evidence. We will consider each issue in turn.
 SUMMARY JUDGMENT STANDARD {¶ 30} When reviewing a trial court's decision regarding a motion for summary judgment, an appellate court conducts a de novo review. See, e.g., Doe v. Shaffer (2000), 90 Ohio St.3d 388, 390, 738 N.E.2d 1243;Grafton v. Ohio Edison Co. (1996), 77 Ohio St.3d 102, 105, 671 N.E.2d 241. Accordingly, an appellate court must independently review the record to determine if summary judgment was appropriate and need not defer to the trial court's decision. See Brown v. Scioto Bd. of Commrs. (1993),87 Ohio App.3d 704, 711, 622 N.E.2d 1153; Morehead v. Conley (1991),75 Ohio App.3d 409, 411-12, 599 N.E.2d 786. In determining whether a trial court properly granted a motion for summary judgment, an appellate court must review the standard for granting a motion for summary judgment as set forth in Civ.R. 56, as well as the applicable law.
 {¶ 31} Civ.R. 56(C) provides, in relevant part, as follows:
 {¶ 32} "* * * * Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence in the pending case, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. No evidence or stipulation may be considered except as stated in this rule. A summary judgment shall not be rendered unless it appears from the evidence or stipulation, and only from the evidence or stipulation, that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, that party being entitled to have the evidence or stipulation construed most strongly in the party's favor."
 {¶ 33} Thus, a trial court may not grant a motion for summary judgment unless the evidence before the court demonstrates that: (1) no genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the nonmoving party, that conclusion is adverse to the party against whom the motion for summary judgment is made. See, e.g., Vahila v. Hall (1997),77 Ohio St.3d 421, 429-30, 674 N.E.2d 1164.
 {¶ 34} In responding to a motion for summary judgment, the nonmoving party may not rest on "unsupported allegations in the pleadings." Harless v. Willis Day Warehousing Co. (1978), 54 Ohio St.2d 64,66, 375 N.E.2d 46. Rather, Civ.R. 56 requires the nonmoving party to respond with competent evidence that demonstrates the existence of a genuine issue of material fact. Specifically, Civ.R. 56(E) provides:
 {¶ 35} "* * * * When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the party's pleadings, but the party's response, by affidavit or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the party does not so respond, summary judgment, if appropriate, shall be entered against the party."
 {¶ 36} Consequently, once the moving party satisfies its Civ.R. 56 burden, the nonmoving party must demonstrate, by affidavit or by producing evidence of the type listed in Civ.R. 56(C), that a genuine issue of material fact remains for trial. A trial court may grant a properly supported motion for summary judgment if the nonmoving party does not respond, by affidavit or as otherwise provided in Civ.R. 56, with specific facts showing that there is a genuine issue for trial. SeeDresher v. Burt (1996), 75 Ohio St.3d 280, 293, 662 N.E.2d 264; Jacksonv. Alert Fire Safety Equip., Inc. (1991), 58 Ohio St.3d 48, 52,567 N.E.2d 1027.
 {¶ 37} Applying the foregoing principles to the case at bar, we conclude that the trial court properly granted summary judgment in appellees' favor.
 LEGAL MALPRACTICE {¶ 38} To establish a cause of action for legal malpractice, a plaintiff must establish the following elements: (1) an attorney-client relationship giving rise to a duty; (2) a breach of that duty; and (3) damages proximately resulting from the breach. See, e.g., Vahila v. Hall
(1997), 77 Ohio St.3d 421, 674 N.E.2d 1164, syllabus; Krahn v. Kinney
(1989), 43 Ohio St.3d 103, 538 N.E.2d 1058. A plaintiff who cannot demonstrate that a traditional attorney-client relationship existed may nevertheless maintain a cause of action for legal malpractice if the evidence illustrates either of the following: (1) that the plaintiff is in privity with the client of the defendant-attorney; or (2) that the defendant-attorney acted maliciously. See Scholler v. Scholler (1984),10 Ohio St.3d 98, 462 N.E.2d 158, paragraph one of the syllabus. If a plaintiff fails to establish a genuine issue of material fact as to any of the foregoing elements, the defendant is entitled to summary judgment on a legal malpractice claim. See Advanced Analytics Laboratories v.Kegler, Brown, Hill Ritter, 148 Ohio App.3d 440, 2002-Ohio-3328,773 N.E.2d 1081, at ¶ 34.
 {¶ 39} In the case at bar, the parties dispute whether (1) a traditional attorney-client relationship existed between appellant and appellees; (2) appellant was in privity with the Hollenbaugh defendants, the clients of appellees, the defendants-attorneys; and (3) appellees acted maliciously.
 Attorney-Client Relationship {¶ 40} We agree with the trial court's conclusion that no genuine issues of material fact exist as to whether appellant and appellees shared a traditional attorney-client relationship. Instead, the evidence reveals that appellees represented the Hollenbaugh defendants and not appellant.
 {¶ 41} An attorney-client relationship exists when "an attorney advises others as to their legal rights, a method to be pursued, the forum to be selected, and the practice to be followed for the enforcement of their rights." Landis v. Hunt (1992), 80 Ohio App.3d 662, 669,610 N.E.2d 554, 558. An essential element in evaluating whether an attorney-client relationship exists is whether "the relationship invoked such trust and confidence in the attorney that the communication became privileged and, thus, the information exchanged was so confidential as to invoke an attorney-client privilege." Id. "However, the ultimate issue is whether the putative client reasonably believed that the relationship existed and that the attorney would therefore advance the interests of the putative client." Henry Filters, Inc. v. Peabody Barnes, Inc.
(1992), 82 Ohio App.3d 255, 261, 611 N.E.2d 873.
 {¶ 42} In Landis, the court upheld the trial court's conclusion that no attorney-client relationship existed between the plaintiffs and an attorney. The Landis court noted that the plaintiffs had retained an attorney, Hunt, who then contacted another attorney, Ahern, to gather information about medical malpractice claims. Hunt and Ahern discussed the statute of limitations. Hunt did not refer the case to Ahern. In concluding that no attorney-client relationship existed between the plaintiffs and Ahern, the court reasoned that although the plaintiffs may have been aware that Hunt conferred with Ahern about their case, "that was the extent of their involvement with Ahern." In short, the court determined that no facts existed to establish that a communication occurred between the plaintiffs and Ahern "which was so confidential as to invoke an attorney-client privilege."
 {¶ 43} In the case sub judice, the Hollenbaugh defendants did not consult with appellees to discuss the merits of appellant's case against K-Mart. Instead, the Hollenbaugh defendants' insurance carrier contacted appellees so that appellees could advise the Hollenbaugh defendants as to appellant's potential legal malpractice claims. While ultimately, discussions occurred between the Hollenbaugh defendants and appellees concerning the merits of appellant's case against K-Mart, the purpose of the discussions was not to advise appellant as to how to proceed in his action against K-Mart. Instead, the purpose of the discussions was to advise the Hollenbaugh defendants as to how to minimize the damage arising out of appellant's legal malpractice claim.
 {¶ 44} Furthermore, no evidence exists that appellant directly communicated any confidential information to appellees. Landis, supra. Thus, a confidential communication did not occur between appellant and appellees so as to invoke the attorney-client privilege.
 {¶ 45} Appellant nevertheless argues that an attorney-client relationship existed between him and appellees because appellees' advice to the Hollenbaugh defendants indirectly benefitted him.[3] Appellant asserts that appellees' advice to Hollenbaugh regarding appellant's claims against K-Mart constituted advice to appellant and, thus, the advice created an attorney-client relationship. Appellees counter that their advice to Hollenbaugh was not designed to help appellant prosecute his claims against K-Mart, but, instead, was designed to protect Hollenbaugh against further malpractice claims and to minimize any malpractice that already occurred.
 {¶ 46} We disagree with appellant that appellees' advice to the Hollenbaugh defendants constituted advice to appellant sufficient to create an attorney-client relationship. Appellees, attorneys retained to protect the Hollenbaugh defendants, advised the Hollenbaugh defendants regarding any potential legal malpractice claim that appellant may have. While that advice included advice on how to proceed with appellant's claims against K-Mart, the advice was not intended to be advice strictly for appellant's benefit. Rather, appellees' intended their advice to the Hollenbaugh defendants to benefit the Hollenbaugh defendants. Appellees, acting as attorneys protecting their clients from a potential legal malpractice claim, needed to advise their clients as to how to minimize damage and protect against further malpractice. In order to do so in the context of the instant case, appellees needed to advise the Hollenbaugh defendants of any further course of action appellant may have had against K-Mart. If appellees had not advised the Hollenbaugh defendants as to how to proceed with appellant's claims against K-Mart, appellees potentially would have exposed their clients to further malpractice liability.
 {¶ 47} Appellant further appears to argue that an attorney-client relationship existed between him and appellees because the Hollenbaugh defendants disclosed to appellees appellants' confidential information. Appellant claims that the Hollenbaugh defendants' disclosure violated various ethical rules and considerations.
 {¶ 48} We disagree with appellant that the Hollenbaugh defendants' actions (the disclosure of appellant's confidential information to appellees) created an attorney-client relationship between appellant and appellees. The Hollenbaugh defendants disclosed the information to appellees so that appellees would have all the necessary information to properly advise the Hollenbaugh defendants with respect to any potential malpractice claims; not so that appellees could advise appellant as to how to proceed with his claims against K-Mart. Under the facts presented in the case at bar, we are unwilling to conclude that the Hollenbaugh defendants' disclosure of appellant's confidential information to appellees created an attorney-client relationship.
 {¶ 49} Furthermore, to the extent that appellant asserts that the Hollenbaugh defendants and the appellees' purported violation of various ethical rules and considerations created an attorney-client relationship, we disagree with appellant. Violations of disciplinary rules and actions for legal malpractice represent distinct interests.
 {¶ 50} "The purpose of disciplinary actions is to protect the public interest and to ensure that members of the bar are competent to practice a profession imbued with the public trust. Disciplinary Counselv. Trumbo (1996), 76 Ohio St.3d 369, 667 N.E.2d 1186. These interests are different from the purposes underlying tort law, which provides a means of redress to individuals for damages suffered as a result of tortious conduct. Accordingly, violation of the Disciplinary Rules does not, in itself, create a private cause of action. Am. Express Travel RelatedServ. Co. v. Mandilakis (1996), 111 Ohio App.3d 160, 675 N.E.2d 1279. * * *
 {¶ 51} Moreover, the power to determine violations of the Disciplinary Rules is reserved to [the Ohio Supreme Court]. Melling v.Stralka (1984), 12 Ohio St.3d 105, 465 N.E.2d 857." Fred Siegel Co.,L.P.A. v. Arter Hadden (1999), 85 Ohio St.3d 171, 178,707 N.E.2d 853. See, also, Northwestern Life Ins. Co. v. Roger (1989),61 Ohio App.3d 506, 512, 573 N.E.2d 159 (concluding that violation of the Disciplinary Rules does not constitute malpractice per se); Montali v.Day, Cuyahoga App. No. 80327, 2002-Ohio-2175, at ¶ 36 (stating that the violation of a disciplinary rule does not create a private cause of action).
 {¶ 52} We further disagree with appellant that his subjective belief that appellees represented his interest is sufficient to create an attorney-client relationship. See Lemley v. Kaiser (Apr. 30, 1987), (stating that the "belief of the parties that an attorney-client relationship exists is not sufficient to create the relationship unless their state of mind is reasonably induced by representations or conduct of the attorney; they cannot establish it unilaterally"); see, also,Kalamazoo v. Michigan Disposal Service (W.D.Mich., 2001)151 F. Supp.2d 913, 918 ("Other than the plaintiffs' subjective beliefs, there was no evidence that the attorneys ever believed that they represented the plaintiffs, nor was there any evidence of written or oral communications between the plaintiffs and the attorneys evidencing an attorney-client relationship."). Whether an attorney-client relationship exists is not to be determined solely by examining one party's subjective beliefs, but instead, must be determined objectively by examining the nature and circumstances of the parties' interaction. The surrounding circumstances of the parties' interaction must reveal that the client's subjective belief was reasonable. See Henry Filters,82 Ohio App.3d at 261 (stating that "the ultimate issue is whether the putative client reasonably believed" that an attorney-client relationship existed).
 {¶ 53} In the case sub judice, the circumstances of appellant's and appellees' interaction fails to establish that an attorney-client relationship existed. Appellant never met appellees. Appellant had only one phone conversation with Satullo. Appellees never directly advised appellant as to any course of action against K-Mart. Additionally, appellant did not pay appellees a fee. Appellant's assertion that he believed that an attorney-client relationship existed because appellees were "cc'd" on various correspondence does not sufficiently establish a reasonable belief that appellee acted on his behalf. No evidence exists that anyone from the Reminger firm advised appellant that appellees acted on his behalf.
 {¶ 54} Thus, in light of the foregoing factors, we cannot conclude that an attorney-client relationship existed between appellant and appellees.
 Privity {¶ 55} Because a traditional attorney-client relationship did not exist between appellant and appellees, appellant may not maintain a legal malpractice action against appellees unless the evidence reveals that appellant was in privity with the Hollenbaugh defendants or unless the evidence reveals that appellees acted maliciously.
 {¶ 56} An attorney generally owes no duty to third-party, non-clients. See Scholler v. Scholler (1984), 10 Ohio St.3d 98,462 N.E.2d 158, paragraph one of the syllabus. As the court explained inScholler:
 {¶ 57} "An attorney is immune from liability to third persons arising from his performance as an attorney in good faith on behalf of, and with the knowledge of his client, unless such third person is in privity with the client * * *." Id.; see, also, Elam v. Hyatt Legal Serv.
(1989), 44 Ohio St.3d 175, 176, 541 N.E.2d 616; Sayyah v. Cutrell
(2001), 143 Ohio App.3d 102, 110, 757 N.E.2d 779.
 {¶ 58} In Simon v. Zipperstein, the court explained the rationale underlying the rule that absent privity, third persons may not sue an attorney for legal malpractice:
 {¶ 59} "Some immunity from being sued by third persons must be afforded an attorney so that he may properly represent his client. To allow indiscriminate third-party actions against attorneys of necessity would create a conflict of interest at all times, so that the attorney might well be reluctant to offer proper representation to his client in fear of some third-party actions against the attorney himself." (1987),32 Ohio St.3d 74, 76, 512 N.E.2d 636. Thus, an attorney must be permitted to zealously represent his client without fear of being sued for legal malpractice by third parties who have no direct interest in the affairs of the attorney's client. See Sayyah, 143 Ohio App.3d at 111-12 ("The rationale behind the privity requirement is clear: `[T]he obligation of an attorney is to direct his attention to the needs of the client, not to the needs of a third party not in privity with the client * * *.'").
 {¶ 60} "For legal malpractice purposes, privity between a third person and the client exists where the client and the third person share a mutual or successive right of property or other interest." Sayyah,143 Ohio App.3d at 111-12 (citing Arpadi v. First MSP Corp. (Apr. 23, 1992), Cuyahoga App. No. 59939, and Black's Law Dictionary (7 Ed.Rev. 1999) 1217 (defining privity as "[t]he connection or relation between two parties, each having a legally recognized interest in the same subject matter").
 {¶ 61} "In determining privity, the trial court must first examine the interest that the original attorney-client relationship was intended to protect and then compare it to the interest of the third person bringing suit for the alleged legal malpractice. See Scholler,10 Ohio St.3d at 104. Privity exists if the interest of the client is concurrent with the interest of the third person. Id." Sayyah,143 Ohio App.3d at 112.
 {¶ 62} In Scholler, the Ohio Supreme Court concluded that privity did not exist between a minor child and the mother who had engaged an attorney to represent her during dissolution proceedings. The mother sought to maintain a legal malpractice action on behalf of her minor child against the attorney who had prepared child support provisions in a separation agreement. In concluding that privity did not exist between the attorney and the minor child during the negotiation of the separation agreement, the court reasoned that simply because child support provisions were included in the separation agreement did not mean that the mother's attorney represented the interests of the minor child.
 {¶ 63} In the case at bar, we conclude that appellant was not in privity with the Hollenbaugh defendants. Appellant and the Hollenbaugh defendants did not share a mutual interest. The interest of the attorney-client relationship between appellant and the Hollenbaugh defendants was to prosecute appellant's claims against K-Mart. The interest of the attorney-client relationship between the Hollenbaugh defendants and appellees was to protect the Hollenbaugh defendants against appellant's potential malpractice claim. Appellant did not share an interest in protecting the Hollenbaugh defendants from malpractice liability. Appellant's interest in retaining the Hollenbaugh defendants and the Hollenbaugh defendants' interest in retaining appellees could not be more diverse. Thus, because the interest between appellant and the Hollenbaugh defendants was not the same, no privity exists between appellant and the Hollenbaugh defendants. Because no privity exists between appellant and the Hollenbaugh defendants, appellant may not maintain a legal malpractice action against appellees, unless the evidence demonstrate that appellees acted maliciously.
 Malice {¶ 64} Appellant also asserts that he may maintain a legal malpractice action against appellees because appellees acted with malice. Appellant contends that the Hollenbaugh defendants' and appellees' alleged violation of various ethical rules demonstrates malice. We disagree with appellant.
 {¶ 65} "Malice" means "(1) that state of mind under which a person's conduct is characterized by hatred, ill will or a spirit of revenge, or (2) a conscious disregard for the rights and safety of other persons that has a great probability of causing substantial harm." Prestonv. Murty (1987), 32 Ohio St.3d 334, 336, 512 N.E.2d 1174; see, also,Buckeye Union Ins. Co. v. New England Ins. Co. (1999), 87 Ohio St.3d 280,286, 720 N.E.2d 495.
 {¶ 66} No evidence exists that appellees acted with malice toward appellant. Appellees' conduct toward appellant did not exhibit hatred, ill will, or a spirit of revenge. Although appellees' interest in protecting the Hollenbaugh defendants was divergent from appellant's interest, a mere difference of interests is insufficient to establish malice. Moreover, the difference of interests does not demonstrate that appellees consciously disregard appellant's rights.
 {¶ 67} We further disagree with appellant that appellees' purported violations of various ethical rules and considerations demonstrate malice. First, no evidence exists as to whether appellees knew that they violated any ethical rules or considerations. Second, assuming that appellees violated ethical rules or considerations, such violations, standing alone, do not sufficiently demonstrate malice. Attorneys may unwittingly violate ethical rules and considerations and we are unwilling to conclude that a violation of an ethical rule or consideration demonstrates malice.
 {¶ 68} We therefore conclude that no genuine issues of material fact remains as to whether appellees acted with malice.
 IMPROPER WEIGHING OF EVIDENCE {¶ 69} Appellant also argues that the trial court improperly weighed the evidence in granting appellees summary judgment. Appellant specifically claims that the trial court erred by determining that (1) he owed legal fees to the Hollenbaugh defendants; (2) over $2,000 in legal fees remained unpaid; (3) Satullo would return appellant's client file if appellant paid copying costs of approximately $1,200; and (4) Hollenbaugh notified his insurance carrier and the insurance carrier engaged Satullo to represent the Hollenbaugh defendants.
 {¶ 70} After our review of this matter, we believe that whether the trial court improperly weighed the evidence as to the above facts does not affect the outcome of appellant's case. None of the above facts constitute genuine issues of material fact. The first three facts, whether appellant owed legal fees to the Hollenbaugh defendants, whether over $2,000 in legal fees remained unpaid, and whether Satullo agreed to return the file if appellant paid copying costs, do not assist appellant in establishing a legal malpractice claim against appellees. The issue to which the facts could be relevant is the appellant's conversion claim. However, appellant has not argued that the trial court improperly granted summary judgment in appellees' favor regarding his conversion claim. Moreover, even if the facts are disputed, the disputed facts do not negate appellees' good faith belief that an attorney's lien existed on the file.
 {¶ 71} The fourth fact, that Hollenbaugh contacted his insurance carrier who, in turn, contacted appellees, also is not a genuine issue of material fact. Appellant seems to assert that this fact helps demonstrate that appellees acted with malice. We fail to see how Hollenbaugh's actions in contacting of his insurance carrier, which in turn contacted Satullo, demonstrates malice.
 {¶ 72} We thus conclude that even if the trial court improperly weighed the evidence, the above facts are not genuine issues of material fact that preclude summary judgment. See Turner v. Turner (1993),67 Ohio St.3d 337, 340, 617 N.E.2d 1123 (quoting Anderson v. LibertyLobby, Inc. (1986), 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202
("As to materiality, the substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.").
 SPOILATION OF EVIDENCE {¶ 73} Appellant further asserts that the trial court erred by determining that no genuine issues of material fact exist as to whether appellees spoilated evidence.[4] Appellant contends that "there is a multitude of sinister and/or wrongful conduct that can be perceived or gleaned from the evidence." Appellant also argues that the trial court failed to properly apply the law.
 {¶ 74} To overcome a properly supported summary judgment motion relating to a claim for spoilation or destruction of evidence, a plaintiff must establish that a genuine issue of material fact exists as to each of the following:
 {¶ 75} "(1) pending or probable litigation involving the plaintiff, (2) knowledge on the part of defendant that litigation exists or is probable, (3) willful destruction of evidence by defendant designed to disrupt the plaintiff's case, (4) disruption of the plaintiff's case, and (5) damages proximately caused by the defendant's acts[.]" Smith v.Howard Johnson Co., Inc. (1993), 67 Ohio St.3d 28, 29, 615 N.E.2d 1037. The term "willful," as used in "willful destruction of evidence by defendant designed to disrupt the plaintiff's case," "necessarily contemplates more than mere negligence or failure to conform to standards of practice, but instead anticipates an intentional, wrongful act." Whitev. Ford Motor Co. (2001), 142 Ohio App.3d 384, 387-88, 755 N.E.2d 954
(citing Drawl v. Cornicelli (1997), 124 Ohio App.3d 562, 706 N.E.2d 849). In Drawl, the court explained the term "willful" as follows:
 {¶ 76} "[T]he term `willful' * * * include[s] the following: `Premeditated; malicious; done with evil intent, or with a bad motive or purpose * * *. An act * * * is `willfully' done, if done voluntarily and intentionally and with the specific intent to do something the law forbids * * *; that is to say, with bad purpose * * *.'" Id.,124 Ohio App.3d at 567 (quoting Black's Law Dictionary (6 Ed. 1990) 1599).
 {¶ 77} In the case at bar, we agree with the trial court's conclusion that no genuine issues of material fact remain as to whether appellees willfully destroyed evidence in an attempt to disrupt appellant's case. Appellant asserts that appellees "were careless with the file" because "[t]hey took no precautions to inventory the contents" or "to preserve the integrity of the file." Carelessness, however, is insufficient to establish willfulness.
 {¶ 78} We further disagree with appellant that appellees' failure to timely return appellant's client file establishes willful destruction of evidence. Instead, the evidence reveals that appellees possessed a good faith belief that an attorney's retaining lien existed on the file that entitled them to withhold appellant's file until the outstanding fees were paid.[5] Appellees contacted Hollenbaugh to determine whether any fees were outstanding. Hollenbaugh advised that appellant did, in fact, have outstanding fees. Given the above facts, appellees reasonably believed that an attorney's retaining lien existed.
 {¶ 79} Although appellant appears to claim that appellees' assertion of an attorney's retaining lien was not valid, whether appellees' assertion of an attorney's retaining lien was valid according to law is not the question. Rather, the question is whether appellees possessed a good faith belief that such a lien existed.
 {¶ 80} We further disagree with appellant that the trial court improperly applied the law as it relates to spoilation of evidence and punitive damages. Appellant claims that the trial court failed to consider the Ohio Supreme Court decisions in Moskovitz v. Mt. Sinai Med. Ctr.
(1994), 69 Ohio St.3d 638, 635 N.E.2d 331, and Davis v. Wal-Mart Stores,Inc. (2001), 93 Ohio St.3d 488, 756 N.E.2d 657. First, we note that appellant's citations to Davis are not taken from the majority opinion. Instead, appellant's citations are to Justice Sweeney's opinion concurring in part and dissenting in part. Therefore, because appellant's argument is not based on controlling law, we will not address it.
 {¶ 81} Furthermore, to the extent that appellant argues thatDavis stands for the proposition that a cause of action exists for interference with evidence, the elements of such a cause of action are stated in Smith, supra. Neither the majority opinion in Davis nor Justice Sweeney's concurring and dissenting opinion sets forth a new cause of action for interference with evidence.
 {¶ 82} Second, it is "an age-old proposition that proof of actual damages in an underlying cause of action is a necessary predicate for an award of punitive damages." Moskovitz v. Mt. Sinai Med. Ctr. (1994),69 Ohio St.3d 638, 649, 635 N.E.2d 331. In Moskovitz, the court explained:
 {¶ 83} "In Ohio, no civil action may be maintained simply for punitive damages. Rather, punitive damages are awarded as a mere incident of the cause of action in which they are sought. Thus, compensable harm stemming from a cognizable cause of action must be shown to exist before punitive damages can be considered." 69 Ohio St.3d at 650 (citations omitted).
 {¶ 84} In the case at bar, appellant failed to establish a cognizable cause of action that entitles him to compensatory damages against appellees. In the absence of a cognizable cause of action, appellant may not recover punitive damages. Consequently, we disagree with appellant that the trial court erred by entering summary judgment in appellees' favor regarding his claim for spoilation of evidence.
 {¶ 85} In sum, we conclude that the trial court did not err by granting appellees' summary judgment motion. Accordingly, based upon the foregoing reasons, we overrule appellant's first assignment of error.
 II {¶ 86} In his second assignment of error, appellant asserts that the trial court erred by considering appellees' first motion for summary judgment without permitting appellant to conduct additional discovery. Appellant claims that the trial court failed to allow him time to discover the relevant facts necessary to oppose appellees' motion. Appellant notes that he did not specifically invoke Civ.R. 56(F); nevertheless, appellant asserts that he properly requested additional time for discovery by raising the request in his memorandum in opposition to appellees' summary judgment and at oral argument during the trial court proceedings.
 {¶ 87} Appellees respond that all relevant facts relating to its motion for summary judgment regarding appellant's legal malpractice claim were before the court when it ruled on appellees' summary judgment motion and that additional discovery would not, and did not, change the relevant facts. Appellees further assert that appellant, by failing to invoke Civ.R. 56(F), waived the argument that the trial court erred by failing to permit appellant to conduct additional discovery prior to ruling upon appellees' motion.
 {¶ 88} We initially agree with appellant that his failure to specifically invoke Civ.R. 56(F) to request additional time to conduct discovery is not determinative of whether the trial court should have allowed additional discovery. In Tucker v. Webb Corp. (1983),4 Ohio St.3d 121, 122, 447 N.E.2d 100, the Ohio Supreme Court recognized that the plaintiff, while not citing Civ.R. 56(F), did essentially request the trial court for additional time to conduct discovery. Thus, we disagree with appellees that appellant's failure to cite to Civ.R. 56(F) when he requested additional time results in a waiver of the issue.
 {¶ 89} We, however, disagree with appellant that the trial court erred by failing to allow him additional time to conduct discovery. Civ.R. 56(F) provides:
 {¶ 90} "Should it appear from the affidavits of a party opposing the motion for summary judgment that the party cannot for sufficient reasons stated present by affidavit facts essential to justify the party's opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or discovery to be had or may make such other order as is just."
 {¶ 91} Thus, the rule requires a party seeking a continuance to provide the trial court with sufficient reasons why it "`cannot present by affidavit facts sufficient to justify its opposition.'" Denham v. NewCarlisle (2000), 138 Ohio App.3d 439, 443, 741 N.E.2d 587 (quoting GatesMills Invest. Co. v. Pepper Pike (1978), 59 Ohio App.2d 155, 169,392 N.E.2d 1316).
 {¶ 92} A trial court enjoys broad discretion when ruling on a Civ.R. 56(F) motion for additional discovery. See Kelley v. Ford MotorCredit Co. (2000), 137 Ohio App.3d 12, 18, 738 N.E.2d 9; Walter v. AlliedSignal, Inc. (1999), 131 Ohio App.3d 253, 264. Absent an abuse of that discretion, a reviewing court will not reverse the trial court's decision. See Kelley, 137 Ohio App.3d at 18.
 {¶ 93} "`Abuse of discretion * * * implies not merely error of judgment, but perversity of will, passion, prejudice, partiality, or moral delinquency.
 {¶ 94} "* * * *
 {¶ 95} "`[I]t must be kept in mind that "abuse of discretion" means more than an error of law or error of judgment * * *. It means "a discretion exercised to an end or purpose not justified by, and clearly against reason and evidence" * * *. Where the court does not exercise a discretion in the sense of being discreet, circumspect, [and] prudent and exercising cautious judgment, there is an abuse of discretion. * * * The term has been defined as "a view or action that no conscientious judge, acting intelligently, could have honestly taken.'" Davis v. ImmediateMedical Services, Inc. (1997), 80 Ohio St.3d 10, 21-22, 684 N.E.2d 292
(quoting State ex rel. Shafer v. Ohio Turnpike Comm. (1953),159 Ohio St. 581, 590-91, 113 N.E.2d 14, 19) (internal quotations omitted). Moreover, when applying the abuse of discretion standard, an appellate court may not substitute its judgment for that of the trial court. See, e.g., State ex rel. Duncan v. Chippewa Twp. Trustees (1995),73 Ohio St.3d 728, 732, 654 N.E.2d 1254 (citing_In re Jane Doe 1 (1991),57 Ohio St.3d 135, 137-138, 566 N.E.2d 1181).
 {¶ 96} In the case at bar, we do not believe that the trial court abused its discretion by denying appellant's request for a continuance. Appellant did not sufficiently indicate how additional discovery would have aided him in rebutting appellees' summary judgment motion. See PennTraffic Co. v. AIU Ins. Co. (Sept. 10, 2001), Pike App. No. 00CA653 (stating that a trial court does not abuse its discretion when it grants a motion for summary judgment in spite of outstanding discovery requests when those discovery proceedings would not aid in establishing or negating the facts at issue).
 {¶ 97} Additionally, we agree with appellees that the trial court had before it all relevant facts necessary to rule upon their summary judgment motion as it related to appellant's legal malpractice claim. Consequently, we conclude that the trial court did not abuse its discretion by denying appellant's request for additional discovery.
 {¶ 98} Accordingly, based upon the foregoing reasons, we overrule appellant's second assignment of error.
 III {¶ 99} In his third assignment of error, appellant argues that the trial court improperly denied appellant's discovery requests as it related to Zurich. Appellant asserts that the trial court erroneously determined that certain documents were protected by the attorney-client privilege. Appellant also asserts that the trial court erred by determining that service of a subpoena under R.C. 3827.03 was not proper to depose Zurich's out-of-state non-party witness. We disagree with appellant.
 {¶ 100} "[M]anagement of the discovery process lies solely within the trial court's discretion. A reviewing court will not reverse a trial court's decision regarding discovery absent an abuse of that discretion."Chomczynski v. Cinna Scientific, Inc., Hamilton App. No. C-010170, 2002-Ohio-4605, at ¶ 22 (citing Mauzy v. Kelly Services, Inc.
(1996), 75 Ohio St.3d 578, 592, 664 N.E.2d 1272, and Glick v. Marler
(1992), 82 Ohio App.3d 752, 758, 613 N.E.2d 254).
 {¶ 101} In the case sub judice, appellant has failed to specify how the documents requested from Zurich would have helped his case. See Civ.R. 26(B)(1). Thus, any error in the trial court's decision to deny appellant access to portions of Zurich's file was not prejudicial.
 {¶ 102} Additionally, we agree with the trial court's conclusion that the attorney-client privilege protected the documents. In In reKlemann (1936), 132 Ohio St. 187, 5 N.E.2d 492, the Ohio Supreme Court discussed the attorney-client privilege as it relates to an insurance company and the attorney the insurance company hires to protect its interests:
 {¶ 103} "Where an insurer receives a report from its insured concerning a casualty covered by its policy of insurance, such report becomes the property of the insurer and subject to its complete control; and, when the insurer transmits it to its counsel for the purpose of preparing a defense against a possible law suit growing out of such casualty, such report constitutes a communication from client to attorney and is privileged against production and disclosure * * *." Id., paragraph one of the syllabus, quoted in Breech v. Turner (1998),127 Ohio App.3d 243, 249, 712 N.E.2d 776.
 {¶ 104} In the case at bar, the rule of Klemann reveals that the attorney-client privilege protected Zurich's files. Zurich, the insurer, received a report from the Hollenbaugh defendants, its insured, concerning a legal malpractice claim, a casualty covered under Zurich's policy. The report then became Zurich's property. When Zurich transmitted the report to appellees, the counsel it retained to prepare a defense to the legal malpractice claim, the report constituted an attorney-client communication that is privileged. Similarly, any communication between Zurich and appellees or any work-product concerning the legal malpractice claim would be privileged.
 {¶ 105} Appellant's argument that the privilege was waived is without merit. Appellant correctly notes that the Hollenbaugh defendants waived the attorney-client privilege as between them and appellees. However, the Hollenbaugh defendants could not, and did not, waive the attorney-client privilege as between Zurich and appellees. Consequently, we disagree with appellant that the trial court erred by determining that the attorney-client privilege protected certain documents within Zurich's possession.
 {¶ 106} We also disagree with appellant that the trial court erred by determining that service of a subpoena under R.C. 3827.03[6] was not proper to depose Zurich's out-of-state non-party witness. In Burgess v.Prudential Ins. Co. of America (June 29, 1988), Hamilton App. No. C-870225, the court considered and rejected a similar argument. InBurgess, the plaintiff argued that the trial court erroneously quashed her subpoenas served pursuant to R.C. 3909.05[7] upon the insurer's statutory agent to compel the insurer to produce out-of-state agents. In rejecting the plaintiff's argument, the court explained:
 {¶ 107} "[The plaintiff] cites no authority in support of her position that the statute requiring an out-of-state corporation to waive service if it desires to conduct business in Ohio, R.C. 3909.05, gives a party the ability to call individual employees of the out-of-state corporation into the state for depositions or testimony at trial. The statute does not waive the requirement of Civ.R. 45 which requires personal service upon an individual before he can be hailed into court in this state.
 {¶ 108} "Our interpretation of R.C. 3909.05 and Civ.R. 45 does not prevent a party from acquiring the testimony of out-of-state witnesses. Civ.R. 30 provides for the taking of depositions and Civ.R. 32(A)(3) allows the use of depositions in trial. We note further that, under the Uniform Foreign Depositions Act, a party can compel witnesses in a foreign jurisdiction to appear for a deposition, which, pursuant to Civ.R. 32(a), may be used at trial. R.C. 2319.09. The rules and statutes, when construed in this fashion, permit a party to obtain testimony from an out-of-state witness and preserve the rule that personal testimony can be compelled only through personal service."
 {¶ 109} Because R.C. 3927.03 and R.C. 3909.05 are sufficiently similar, we agree with the Burgess court's analysis.
 {¶ 110} Therefore, based upon the foregoing reasons, we overrule appellant's third assignment of error. Additionally, we believe that our decision and judgment with respect to appellant's assignments of error adequately addresses appellees' cross-assignment of error. We will not, therefore, separately address appellees' cross-assignment of error.
 {¶ 111} Accordingly, based upon the foregoing reasons we hereby affirm the trial court's judgment.
JUDGMENT AFFIRMED.
 JUDGMENT ENTRY
It is ordered that the judgment be affirmed and that appellees recover of appellant costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Highland County Common Pleas Court to carry this judgment into execution.
A certified copy of this entry shall constitute that mandate pursuant to Rule 27 of the Rules of Appellate Procedure. Exceptions.
Harsha, J. Kline, J.: Concur in Judgment Opinion.
[1] Draper, Hollenbaugh and Briscoe Co., L.P.A., H. Ritchey Hollenbaugh, and David L. Petitjean are not parties to the instant appeal.
[2] We note that appellant's third "assignment of error" is not framed as an assignment of error. Rather, it is framed as an issue presented for review. We further note that Zurich has not entered an appearance in this appeal.
[3] {¶ a} Appellant's argument sounds similar to a third-party beneficiary analysis employed when examining a third-party's right to sue based upon a contract. Although in Ohio, third-party beneficiary law does not appear to apply in determining whether a third party may maintain a legal malpractice action against an attorney, we note that even if third-party beneficiary law governed, appellant still would not prevail.
{¶ b} "`Third-party beneficiaries have the rights of parties in privity of contract and thus may bring suit for breach of contract.'Waterfield Mortg. v. Buckeye State Mut. Ins. Co. (Sep. 30, 1994), Miami App. No. 93-CA-53, unreported. `The third party need not be named in the contract; however, to recover on a breach of contract claim, "it must be shown that the contract was made and entered into with the intent to benefit the third person."' Kappes v. Village of Moscow (May 4, 1998), Clermont App. No. CA97-09-078, unreported, citing Chitlik v. AllstateIns. Co. (1973), 34 Ohio App.2d 193, 196, 299 N.E.2d 295. This `intent to benefit' test, adopted by the Ohio Supreme Court in Hill v. Sonitrol ofSouthwestern Ohio, Inc. (1988), 36 Ohio St.3d 36, 521 N.E.2d 780, provides that `there must be evidence, on the part of the promisee, that he intended to directly benefit a third party, and not simply that some incidental benefit was conferred on an unrelated party by the promisee's actions under the contract.' TRINOVA Corp. v. Pilkington Bros., P.L.C.
(1994), 70 Ohio St.3d 271, 277-78, 638 N.E.2d 572. Furthermore, `there must be evidence that the promisee assumed a duty to the third party.'Id. `Those cases which have construed whether a contract was made for the direct or incidental benefit of a third party have looked necessarily to the language of the contract to make this determination.' Lin v.Gatehouse Constr. Co. (1992), 84 Ohio App.3d 96, 100, 616 N.E.2d 519."Brewer v. HR Concrete, Inc. (Feb. 5, 1999), Montgomery App. No. 17254.
{¶ c} In the case at bar, no evidence exists that appellees and the Hollenbaugh defendants entered into a contract with the intent to benefit appellant. Rather, the parties intended to benefit the Hollenbaugh defendants. The object of the parties' contract was to advise the Hollenbaugh defendants as to how to protect themselves from further malpractice liability and how to minimize their liability. Although appellees' relationship with the Hollenbaugh defendants may have incidentally benefitted appellant, an incidental benefit is not sufficient to establish privity of contract.
[4] Although appellant also raised a claim for conversion of his client file and although the trial court granted appellees summary judgment regarding appellant's conversion claim, appellant has not raised any argument in his brief that the trial court erred by granting summary judgment in appellees' favor regarding his conversion claim.
[5] An attorney's retaining lien attaches to all property, papers, documents, and monies of the client which come into the attorney's possession during the course of his representation. See Foor v. HuntingtonNat. Bank (1986), 27 Ohio App.3d 76, 79, 499 N.E.2d 1297; Putnam v.Hogan (1997), 122 Ohio App.3d 351, 353-54, 701 N.E.2d 774. A retaining lien "gives the attorney the right to retain possession of such property, papers, documents and money as security for fees and expenses due the attorney in connection with the professional relationship between the attorney and client." Foor, 27 Ohio App.3d at 79.
 "[T]he lien exists as leverage over the client through the embarrassment or inconvenience caused by the attorney's withholding property and papers of the client which are in his possession. Generally, the lien is discharged only by payment of the fees and expenses, by the attorney's voluntarily relinquishing possession of the property, papers and documents to which the lien has attached, by the attorney's wrongful termination of the attorney-client relationship or by termination thereof by the client * * *."
Id.
In Foor, the court explained that a client does not have a right to inspect papers held under a retaining lien.
 "`As a matter of principle, and without regard to authorities, it seems to us that a client's right to inspect the papers upon which the attorney's lien exists should be denied. His lien is a mere retaining lien, and gives him only a right to retain them until his charges are paid. He has no right of sale, and his right of retention is valuable only in proportion as the papers are valuable to his client. The leverage which the possession of the papers affords depends upon how embarrassing to the client the possession of them by the attorney is. If the client is given the right to inspect the papers or to compel their production while the lien continues, it certainly impairs the value of the lien, as it diminishes the embarrassment caused by the attorney's retention of them, and might make them valueless to the attorney, and the lien nugatory. * * *'"
Id. at 80 (quoting The Flush (C.A.2, 1921), 277 F. 25).
[6] R.C. 3827.03 provides, in relevant part, as follows:
 Any foreign insurance company desiring to transact business by an agent in this state shall file with the superintendent of insurance a signed and sealed written instrument that will:
 (A) Authorize any of its agents in this state to acknowledge service of process for the company[.]
[7] R.C. 3909.05 provides, in relevant part, as follows:
 Any life insurance company organized by act of congress or under the laws of another state of the United States, desiring to transact any business of insurance defined in section 3911.01 of the Revised Code in this state by an agent, shall file with the superintendent of insurance a signed and sealed written instrument, authorizing any agent of the company in this state to acknowledge service of process for and in behalf of the company in this state * * *.